UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

   -v-                                               CASE NO.
                                                       8:17-CR-149(NAM)
                                                       8:17CR-218 (NAM)

THOMAS A. BURNELL,
                      Defendant.
_____

# **SENTENCING MEMORANDUM**

DATED: July 30, 2018                                  Respectfully submitted,

                                                             LISA A. PEEBLES
                                                              Federal Public Defender

                                         By:    Randi J. Bianco, Esq.
                                                          Assistant Federal Public Defender
                                                          Bar Roll No. 507514
                                                          Clinton Exchange, 3rd Floor
                                                          4 Clinton Square
                                                          Syracuse, New York   13202
                                                          (315) 701-0080

## I. PRELIMINARY STATEMENT

This sentencing memorandum is submitted on behalf of Thomas Burnell and is intended to cover two separate indictments with sentencing to occur on August 20, 2018.

On April 27, 2018, Mr. Thomas Burnell (hereinafter "Thomas"), and plead guilty to distribution of heroin and fentanyl in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) under indictment No. 8:17-CR-149(NAM) (hereinafter the drug case). He did not admit that he caused the death of the victim. With regard to the drug case, the United States Probation Department prepared a Presentence Investigation Report (*hereinafter* "PSR") on July 24, 2018, in anticipation of Thomas' sentencing.   The plea agreement sets forth a proposed binding sentence of 216 months [18 years] imprisonment. There is no agreement as to the term of supervised release, which can range from three years to life.

On the same day as the drug plea, Thomas pled guilty to Possession of a Prohibited Object by a Federal Prisoner in violation of 18 USC § 1791(a)(2), (b)(3) and (d)(1)(b) charged in a separate indictment (number 8:17-CR-218 (NAM) - hereinafter, the "weapons case"). The weapon was a toothbrush handle sharpened to a point on one end and the other end had a cloth wrapped around it to create a handle. There is no plea agreement for this indictment.

The PSR sets forth a total advisory Offense Level of 13 (after acceptance) and a Criminal History Category of V, resulting in an advisory guideline range of 30 to 37months imprisonment. Notwithstanding the proposed guidelines, the plea was entered into pursuant to an agreement under to Rule 11(c)(1)(C).

1

The Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Fan-Fan*, 125 S.Ct. 738 (2005), held that the guidelines are only advisory. In determining a sentence, a Court must not only consider guideline calculations, but also equally take into account all other statutory concerns listed in 18 U.S.C. § 3553 (a) as well as the Defendant's unique circumstances.

The Sentencing Reform Act provides, in part, that:

The Court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in Paragraph (2) of this subsection. The Court, in determining the particular sentence to be imposed, shall consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed –

    (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) To afford adequate deterrence to criminal conduct;
    (C) To protect the public from further crimes of the defendant; and
    (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a).

Thomas respectfully submits this Memorandum in support of a non-guideline sentence of 216 months imprisonment to be followed by three years of supervised release on the drug case as such a sentence would be "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. § 3553(a)(2). As to the weapons case, Thomas is asking this Court to impose a sentence which runs concurrently with his proposed 18 - year sentence on the drug case.

## II.  THE NATURE AND CIRCUMSTANCE OF THE OFFENSES

Thomas has been addicted to drugs all of his adult life. He did not earn a financial profit from selling heroin, but only sold small quantities so he could continue to use it. He never intended to harm the victim, as they were close friends who saw one another on a regular basis. In fact, earlier that night Thomas had ingested drugs from the same batch he provided to the victim. While Thomas thought the drugs were strong, he did not believe them to be deadly. He warned the victim not to use too much of the drugs because of their strength.

As far as the homemade knife found in his jail cell, Thomas accepts full responsibility for this offense, but wants this Court to understand that the decision to make the weapon was done out of fear. Thomas was the victim of severe physical abuse at the hands of his father while he was growing up. As a result, he became hyper-vigilant to threats. When Thomas entered the Clinton County Jail, he began to receive threats to hurt him because he was a registered sex offender. He became fearful and made the weapon in case someone entered his cell and tried to attack him. In retrospect, Thomas now realizes there were better ways to handle this situation. Unfortunately, while he was in the grips of fear he couldn't think of a better way. Most importantly, Thomas never used the weapon; however, he knows he was wrong to possess it.[1]

## III.  HISTORY AND CHARACTERISTICS OF THOMAS BURNELL

  a) *Thomas' Young Life was Full of Violence and Chaos, which Led to Depression, Anxiety and Substance abuse.*

---

[1] There is some references to Thomas writing letters to a person named Shay in which he talks about actually using the weapon to try "to kill a CO and an inmate there. I could get 15 years for that. . . " [PSR ¶ 25-26]. Thomas never actually used the knife nor did he threaten a CO or another inmate. Thomas lied in an attempt to show how tough he was, when in reality he was very frightened for his safety.

Thomas grew up in a very abusive household. His father was an alcoholic and a drug addict.  His behavior towards Thomas and his brother was unpredictable, erratic and entirely dependent on how intoxicated or high he was at the time. Thomas and his brother were beaten on a daily basis, locked in a room and starved.  The abuse went on for years until child protective agents removed them from the home. After Thomas was removed from his father's home, he was placed into foster care, where he remained for 1 ½ years. Thereafter, Thomas moved in with his substance-abuser mother and her new alcoholic husband when Thomas was 6 ½ years old. While Thomas was not physically abused in his mother's home, she was neglectful.  Thomas and his brother were left to fend for themselves with absolutely no supervision. Given the role models in his life, it was no surprise that Thomas began drinking at the age of 12. He drank every weekend to the point of intoxication and soon began using drugs to self-medicate from depression and anxiety. By age 15, Thomas was thrown out of his mother's home because her husband didn't want him around anymore. His mother justified tossing him out on the street because she "had to fend for herself at that age."  Apparently, she assumed this was normal and Thomas was forced to leave home with nowhere to go.

Thomas' grandmother spoke with Wendy Tiffin, an investigator with the Federal Public Defender's Office, and explained that she was unable to write a support letter because of her health. She described Thomas' life as follows: Tom was a good boy, but had a rough life. "His father messed him up and every time he would get on the right track, his father would do something again. Tom was gullible and got on the wrong track." She also told Investigator Tiffin that she wished she were capable of writing something to the Judge so she could tell him how much Tom helped her after her husband died.

b) *The Physical Abuse Thomas Endured is Directly Connected with his Substance Abuse Issues.*

Thomas' physical abuse led directly to his abuse of drugs and alcohol. He used these substances as a means to cope with his depression and anxiety. As a child, Thomas was diagnosed with ADHD, Post-Traumatic Stress Disorder and depression [PSR ¶ 79]. He was even prescribed Ritalin, but began to abuse this drug as a teenager. Thomas' drug use was persistent and continuous as a means to self-medicate his mental health issues. The Sentencing Guidelines state that mental and emotional conditions are relevant for a departure if they "are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. "It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens," *Santosky v. Kramer*, 455 U.S. 745, 789, (1982)(Rehnquist, J., joined by Burgerm C.J., White, and O'Connor, J. Dissenting).

In extraordinary circumstances, a district court may properly grant a downward departure under the Sentencing Guidelines on the ground that extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense. *U.S. v. Rivera*, C.A.2 (Conn.) 1999, 192 F.3d 81. Here, there is no question that Thomas' childhood abuse directly contributed to the commission of both of these offenses. As to the drug offense, Thomas began using drugs as a direct result of the childhood abuse he suffered. He was a daily drug abuser and used any drug he could get his hands on. To this day, he suffers from depression and anxiety and is on medication for these conditions [See PSR ¶ 77]. Thomas has never been able to maintain sobriety outside of jail. Had it not been for his own drug addiction, the drug offense would never have occurred as he only sold drugs to feed his own drug habit.

Likewise, the possession of the weapon directly relates back to Thomas' fear of being beaten when he was young. When Thomas was a child, he had no control over his environment and had no means to protect himself. Here, as when he was a child, Thomas had no control over his environment while at the Clinton County Jail. He was receiving threats to his safety on a regular basis and he had no means to protect himself from these threats. Out of fear, he created the homemade weapon in case anyone should enter his cell and attack him.  After Thomas was moved from the Clinton County Jail to the Oneida County Jail, he didn't receive any more threats.  Once the threats stopped, Thomas didn't have any more disciplinary infractions.

c)  *Physical Health Issues*

We ask that this court also consider Thomas' physical health issues when imposing sentence. U.S.S.G § 5H1.4 provides that "an extraordinary physical impairment may be a reason" to impose a sentence below the guideline range.  Here, Thomas has an array of physical health problems including diabetes, hepatitis C, thyroid problems and high blood pressure.  He is taking eight medications for his health issues.

Thomas also suffers form constant pain in his back from when he fell off a three-story roof in 1999. As a result of the fall, Thomas suffered from two herniated discs and was hospitalized for one week. His back injury could not be repaired.

### IV. CONCLUSION

Thomas is very remorseful for his actions. He realizes that his addiction has affected every area of his life and everyone who has ever cared for him. This arrest actually saved his life, as he could never have survived continuing using drugs as he had. While in prison, Thomas wants to use his time wisely. He intends to participate in drug treatment programs and all other

available programs so he does not return to his former way of life. We ask this Court to impose a combined sentence of 18 years plus 3 years post-release supervision.

### V.     Request for this Court to recommend FCI Raybrook

The defense further asks this Court to request a designation of FCI Raybrook as this facility is close to home and would allow for a more regular visitation with Thomas' family.

DATED: July 30, 2018                                LISA A. PEEBLES
                                                    FEDERAL PUBLIC DEFENDER


                                        By:     */s/ Randi J. Bianco, Esq.*
                                                Assistant Federal Public Defender
                                                Bar Roll No. 507514
                                                Clinton Exchange, 3rd Floor
                                                4 Clinton Street
                                                Syracuse, New York   13202
                                                (315) 701-0080

TO:   Douglas Collyer, AUSA
      USPO Steven Shefer
      Thomas Burnell

7